## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSE GUERRA
432 Eastern Avenue, N.E.
Washington, D.C.  20019

       *Plaintiff,*

I.L. CREATION OF MARYLAND, INC.
1101 Wootton Parkway
Suite 550
Rockville, MD  20852-1068

*and*

ITLC-LOC, INC.
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036

       *Defendants.*

Civil Action No.: 1:17-cv-1723

JURY TRIAL DEMANDED

## COMPLAINT

Jose Guerra ("Plaintiff" or "Mr. Guerra"), by and through his attorneys, for his Complaint

against I.L. Creation of Maryland, Inc. ("I.L. Creation") and ILTC-LOC, Inc. ("ILTC-LOC")

(collectively "Defendants"), alleges as follows:

### Nature of the Action

1.     This action arises from willful violations of the federal Family and Medical Leave

Act ("FMLA"), 29 U.S.C. § 2601, *et seq.;* the District of Columbia Family and Medical Leave

Act ("DCFMLA"), D.C. Code § 32-501, *et seq.;* Title I of the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 *et seq.;* the District of Columbia Human Rights Act ("DCHRA"),

D.C. Code § 2-1401.01 *et seq.;* the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;*

the D.C. Accrued Sick and Safe Leave Act, D.C. Code § 32-131.01 *et seq.;* the D.C. Minimum

#79663507

Wage Revision Act ("DCMWRA"), D.C. Code § 32-1002, *et seq.;* the D.C. Wage Payment

Collections Law ("DCWPCL"), D.C. Code § 32-1301, *et seq.;* and the common law as to breach

of contract and/or unjust enrichment.

2.      Mr. Guerra seeks to recover all lost wages, salary, employment benefits,

and any other compensation denied or lost as a result of Defendants' violations of one or more of

the aforementioned statutes, breach of contract and or unjust enrichment; compensatory

damages; liquidated damages; consequential damages; punitive damages; attorneys' fees and

costs; pre- and post-judgment interest on all those amounts; and appropriate injunctive and

equitable relief.

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 2617(a)(2); 42

U.S.C. § 2000e-5; 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

4.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because

Defendants do business in the District of Columbia and the actions and omissions giving rise to

the claims asserted herein occurred in this District.

## The Parties

5.      Mr. Guerra is an individual who currently, and at all times relevant to this action,

is a resident of the District of Columbia, residing at 432 Eastern Ave., N.E., Washington, D.C.

20019.  Mr. Guerra was employed by Defendants from approximately November 2010 through

August 6, 2015.  Mr. Guerra speaks fluent Spanish. He cannot read English and has limited

ability to speak English.

6.      LL. Creation is a Maryland corporation engaged in the food service industry, with

its principal office at 1101 Wootton Parkway, Rockville, Maryland, 20852.  Upon information

and belief, I.L. Creation is owned and controlled by Steven Choi and Leena Choi, who were, at all times relevant to this action, residents of Maryland.

7.      ITLC-LOC is a Washington, D.C. corporation, with its principal office at 1225 19th Street, N.W., Suite 320, Washington, D.C. 20036.  Upon information and belief, ITLC-LOC is a wholly-owned subsidiary of I.L. Creation and is also owned and controlled by Steven and Leena Choi.

## Factual Allegations

### Defendants I.L. Creations and ITLC-LOC

8.      I.L. Creation is a company that provides food catering services at various federal government departments, agencies, and related organizations; universities and school districts; and medium and large office complexes.  Upon information and belief, in order to provide such services, I.L.  Creation does business at its different worksites through various wholly-owned corporate entities.

9.      I.L. Creation provided food catering at a worksite located at the United States Coast Guard Headquarters building in Washington, D.C. through a wholly-owned entity, I.L. Creation, The Marketplace, Inc. I.L. Creation's Coast Guard Worksite was closed in January 2015.

10.     I.L. Creation operates at cafeteria worksites for two different American Red Cross buildings (collectively, the "Red Cross Worksites"), through a wholly-owned entity, Defendant ITLC-LOC: One at 430 17th Street, N.W., Washington, D.C. 20006 ("First Red Cross Worksite"), and another at 2025 E Street, N.W., Washington, D.C., 20006 ("Second Red Cross Worksite").

11.     The address listed for ITLC-LOC on paystubs submitted to Mr. Guerra is the same address as I.L. Creation headquarters in Maryland, 11300 Rockville Pike, Suite 803,

Rockville, Maryland 20852. I.L. Creation has the ability to transfer employees between worksites.

12.     Upon information and belief, Steven Choi, the owner of I.L. Creation, must approve, or has joint decision-making power over, employment decisions concerning employees at all I.L. Creation worksites, including those nominally operated by wholly-owned subsidiaries. Upon information and belief, the officers, directors, human resources department arid policies of I.L. Creation and ITLC-LOC are the same.

13.     At all relevant times, Defendants were a single integrated employer that had common management, interrelated operations, central control of labor relations, and common ownership and financial control.

14.     Upon information and belief, Defendants operate contract food services in at least 18 government locations, most of which are in the D.C. metropolitan area. At all relevant times, Defendants employed fifty (50) or more employees within seventy-five miles of their respective Rockville, Maryland and District of Columbia headquarters.  At all relevant times, on information and belief, Defendants have had an annual gross volume of sales made or business done in an amount exceeding $500,000, and have been engaged in interstate commerce and/or in an industry or activity affecting commerce.

15.     Upon information and belief, and at all times relevant to this action, Defendants employed one hundred (100) or more employees in the District of Columbia within the meaning of the D.C. Accrued Sick and Safe Leave Act.

**Mr. Guerra's Disability**

16.     In or about 2001,  Mr. Guerra was diagnosed with Type 2 Diabetes.

17.     As a result of Mr. Guerra's diagnosis, he is required to follow a diabetic diet, take multiple medications, and eat and drink frequently throughout the day. Mr. Guerra is also

required to check his blood sugar three to four times per day and to inject himself with insulin

three times per day with meals.  If Mr. Guerra fails to follow this regimen, his blood sugar will

become uncontrolled, which can cause complications including heart disease (and a higher risk

for heart attack and stroke), dizziness and lightheadedness, and other serious medical problems.

18.     Mr. Guerra's diabetes is an impairment that substantially limits his endocrine

function and ability to eat, without regard to any ameliorative medications Mr. Guerra takes.

**Mr. Guerra's Employment with Defendants**

19.     In or about November 2010, Mr. Guerra was hired by I.L. Creation to work as a

cook. On Mr. Guerra's hiring, I.L. Creation placed him at the Coast Guard Worksite.

20.     As a cook, Mr. Guerra was responsible for preparing grilled breakfast and lunch

sandwiches as ordered by customers and cleaning his station.

21.     Shortly after Mr. Guerra began working at the Coast Guard Worksite, Mr. Guerra

was hospitalized as a result of complications from his diabetes. Mr. Guerra was in the hospital

for two weeks and recovered at home for one week after the hospitalization.

22.     On learning that Mr. Guerra was hospitalized, Mr. Guerra's then-supervisor,

Omar Chavez, told Mr. Guerra to call Mr. Chavez when he was feeling better.  Mr. Guerra was

also instructed to bring documentation of his illness on his return and was told that this was

Defendant's policy.  Mr. Guerra provided such documents to Defendant I.L. Creation and Mr.

Chavez.  At the conclusion of Mr. Guerra's medical leave, Mr. Guerra returned to his position at

the Coast Guard Worksite.

23.     As a result of that incident, Defendant I.L.Creation was on active notice of Mr.

Guerra's medical issues.

24.     In the fall of 2013,  Mr. Guerra was again hospitalized as a result of complications

from his diabetes.  Mr. Guerra again received a leave of absence from his employment.  Upon

returning to work,  Mr. Guerra again provided Defendant I.L. Creation with medical paperwork as required.  At the conclusion of Mr. Guerra's medical leave, he returned to his job at the Coast Guard Worksite.

25.	From the commencement of his employment in 2010 until his transfer in 2015, Mr. Guerra worked at the Coast Guard Worksite without any adverse employment action, either formal or informal, including the absence of any warning of substandard performance.  To the contrary, Mr. Guerra received annual evaluations which were consistently positive.  Mr. Guerra also received praise from customers, was given raises, and on at least one occasion, a special employment bonus when he was named "Employee of the Month" by I.L. Creation.

**Mr. Guerra is Transferred to the First Red Cross Worksite**

26.	On or about February 2015, the Coast Guard closed its office and, as a result, I.L. Creation ceased providing catering services at that location.

27.	As a result of the closure of the Coast Guard Worksite, I.L. Creation transferred Mr. Guerra to the First Red Cross Worksite in or about February 2015.

28.	At the First Red Cross Worksite, Defendants assigned Mr. Guerra the same cook position that he had at the Coast Guard Worksite. Mr. Guerra's assigned shift was Monday through Friday from 6:00 a.m. to 2:30 p.m., and included an unpaid half-hour lunch break from 11:00 a.m. to 11:30 a.m. Upon information and belief, Defendants further determined that Mr. Guerra's salary would be increased to $13.90 per hour based on the collective bargaining agreement with the unionized employees at the Red Cross Worksites.  Upon information and belief, I.L. Creation continued to maintain Mr. Guerra's employment records from his work at the Coast Guard Worksite, and Defendants collectively maintained Mr. Guerra's records from his work at the Red Cross Worksites.

29.     The supervisor during the majority of Mr. Guerra's employment at the First Red Cross Worksite was a male who went by the first name "Brad."

30.     At the First Red Cross Worksite, Mr. Guerra's assigned shift was for 40 hours per week. His scheduled shift consisted of eight hours of working time, plus the unpaid, half-hour meal break each day, from 11:00 a.m. to 11:30 a.m.

31.     During his meal break, Mr. Guerra was supposed to be relieved from work and permitted to eat a meal in the break room at the First Red Cross Worksite.  However, Defendants often denied Mr. Guerra his full meal break.

32.     The extra minutes worked by Mr. Guerra on a daily basis often caused him to work more than 40 hours per week, for which Defendants did not compensate him either at his regular rate of $13.90 per hour or overtime rate of $20.85 per hour.

**Mr. Guerra is Transferred to the Second Red Cross Worksite**

33.     In approximately May or June 2015, Mr. Guerra was transferred from the First Red Cross Worksite to the Second Red Cross Worksite.  At the Second Red Cross Worksite, Mr. Guerra's direct supervisor was Ms. Aeran (pronounced "Anna") Chung. Brad was also Mr. Guerra's supervisor.

34.     At the Second Red Cross Worksite, Mr. Guerra's hours remained Monday to Friday 6:00 a.m. to 2:30 p.m. Mr. Guerra remained in his same position as "grill cook" and continued to perform the same duties.  If Mr. Guerra was out sick on a particular day, one of three other individuals (a chef and two assistant cooks) who worked near the grill would make hot breakfast or lunch sandwiches for customers.

**Defendants Violated Mr. Guerra's Medical Leave and Disability Rights**

35.     Mr. Guerra's supervisors at the Red Cross Worksites were both aware that Mr. Guerra had diabetes.

36.     From time to time, Mr. Guerra asked to be permitted to leave his station to obtain water.  His supervisors, however, often insisted he remain at his station.

37.     Mr. Guerra also requested to keep his own bottle of water by his grill station in order to keep hydrated and still stay at his station.  Mr. Guerra's supervisors told him that he was not allowed to keep a bottle of water at his station.

38.     On Saturday, July 25 and Sunday, July 26, 2015, Mr. Guerra was hospitalized as a result of complications with his diabetes.

39.     On Monday, July 27, 2015, Mr. Guerra reported to work. During his shift, Mr. Guerra began feeling lightheaded and dizzy.  Ms. Chung noticed Mr. Guerra's poor condition and asked Mr. Guerra if he was intoxicated.  Mr. Guerra explained to Ms. Chung that his blood sugar was high and he had been hospitalized over the weekend due to his diabetes.  Ms. Chung sent Mr. Guerra back to his station.

40.     A few hours later, Mr. Guerra was still feeling ill and asked Ms. Chung if he could leave early.  Ms. Chung gave him permission to leave.

41.     Mr. Guerra called a friend and asked her to take him to the hospital.  While waiting for the friend to pick him up, Mr. Guerra fainted.  When Mr. Guerra regained consciousness, he called a taxi and went home.

42.     On July 28, 29, and 30, Mr. Guerra was too ill to come to work as a result of his diabetes.  On Tuesday, July 28 and Wednesday, July 29, Mr. Guerra called either the chef or Ms. Chung at approximately 5:00 a.m. or 5:30 a.m. to report that he was unable to come to work.

43.     On Thursday, July 30 and Friday, July 31, Mr. Guerra was unable to call personally because he was too sick to do so.  Mr. Guerra's brother called Defendants and spoke to Ms. Chung regarding Mr. Guerra's absence.

44.     On Saturday, August 1, Mr. Guerra's condition had deteriorated further and he was vomiting blood.  At approximately 9 p.m. that day, Mr. Guerra was admitted to Medstar Washington Hospital Center suffering from complications as a result of his diabetes.

45.     As a result of the illness and medications, Mr. Guerra remained confused and disoriented while at the hospital on August 3 and 4 and was unable to call Defendants on those days.

46.     On August 5, 2015, when Mr. Guerra's diabetes began to be brought under control, Mr. Guerra's healthcare providers at MedStar met with Mr. Guerra to explain steps he needed to take to manage his diabetes, including making sure to eat regular meals and staying hydrated.

47.     Mr. Guerra's healthcare provider then called the Second Red Cross Worksite, with Mr. Guerra on speakerphone, to discuss with Defendants Mr. Guerra's need for those accommodations on his return to work.

48.     The healthcare provider spoke with Ms. Chung and explained that Mr. Guerra had been hospitalized as a result of complications from his diabetes.  The healthcare provider further informed Ms. Chung that it was medically necessary for Mr. Guerra to maintain a regular schedule for meal times, and that his condition required that he take breaks from 8:00 a.m. to 8:20 a.m. for breakfast and then at 11:00 a.m. to 11:30 a.m. for lunch. Mr. Guerra's healthcare provider also emphasized that Mr. Guerra needed short breaks during the workday to get drinks of water and ingest small amounts of food.

49.     Mr. Guerra then spoke briefly with Ms. Chung. Ms. Chung told Mr. Guerra that he should come see her once he was discharged from the hospital. Ms. Chung further informed Mr. Guerra that she would need to speak with Mr. Choi regarding his requests.  At no time

before or during this call on August 5 did Ms. Chung or any other representative of Defendants advise that they intended to terminate Mr. Guerra.

50.     During the evening of August 5, Mr. Guerra was discharged from the hospital.

51.     At no time during the period of Mr. Guerra's leave from work (July 27 through August 5), did Defendants provide Mr. Guerra with any notice or information about his rights and eligibility under FMLA or the DC equivalent.  Nor did they ask for any additional certification of his condition or medical records from his hospitalization.

52.     Defendants knew or should have known that they were required to give such notice when Mr. Guerra requested to leave work on July 27, 2015, because they were aware that Mr. Guerra was diabetic before July 27:  I.L. Creation knew at the latest in November or December 2010, and ITLC-LOC, at the latest in May 2015.

53.     On August 6, 2015, Mr. Guerra went to the Second Red Cross Worksite to provide Defendants with his medical forms, to discuss his accommodation requests, and to set a date when he would be able to return to work.  Ms. Chung met Mr. Guerra in her office.  Ms. Chung handed Mr. Guerra an "Employee Discipline Warning Notice" (the "Notice") on a pre-printed form.  The Notice stated that Mr. Guerra was being given a "final notice" that he had been absent without excuse on July 31, 2015 at 7:30 a.m.  Although the Notice was backdated to July 31, 2015, it was not shown to Mr. Guerra until August 6, 2015; and the notation at the top of the form was similarly dated August 6, 2015.

54.     Ms. Chung then had Mr. Guerra sign the Notice, which he did.  After Mr. Guerra signed the Notice, Ms. Chung wrote "Termination" on the Notice and advised Mr. Guerra that Mr. Choi had authorized the termination.

55.     Mr. Guerra tried to show Ms. Chung the hospital documentation that he had received and explained that he was absent as a result of his diabetes.  However, she refused to look at the paperwork. Ms. Chung further advised Mr. Guerra that Mr. Choi had decided to terminate Mr. Guerra after the August 5, 2015 call with Mr. Guerra's healthcare provider outlining Mr. Guerra's medical needs.

56.     Following Mr. Guerra's termination, Mr. Guerra sought, but was unable to find, work for approximately seven months.  Although Mr. Guerra eventually returned to work, he has not been able to obtain a wage at the level of the $13.90 per hour he was paid while employed by Defendants.

57.     As a result of his termination, Mr. Guerra experienced increased episodes of depression and emotional distress.

**Exhaustion of Administrative Remedies and Tolling**

58.     Mr. Guerra filed a timely charge of discrimination with the District of Columbia Office of Human Rights ("DCOHR") on January 14, 2016.

59.     DCOHR is a Fair Employment Practices Agency ("FEPA") with which the Equal Opportunity Commission ("EEOC") has a work sharing agreement. Consequently, Mr. Guerra's charge was automatically cross-filed with the EEOC upon filing with the DCOHR.

60.     On March 14, 2017, Mr. Guerra voluntarily withdrew his charge from the DCOHR and requested a "Notice of Right to Sue" letter from the EEOC. Because Mr. Guerra's charge had been pending before the EEOC for more than 180 days, Mr. Guerra has exhausted all required administrative remedies.

61.     Mr. Guerra's timely filing of a charge with the DCOHR within one year of Defendants' violations of the DCFMLA and DCHRAL tolled the statute of limitations for Mr.

Guerra's DCFMLA and DCHRAL claims. D.C. Mun. Regs. tit. 4, § 1610.3; D.C. Code § 2-1403.16.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FMLA
### 29 U.S.C. § 2601 *et seq.*
### (Interference with FMLA Rights — Denial of FMLA Leave and Reinstatement)

62.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

63.     At all relevant times, Defendants were eligible employers under the FMLA because Defendants employed 50 or more employees within 75 miles of their respective headquarters in the twelve months preceding Mr. Guerra's July 27, 2015 request to leave work due to his diabetes. 29 U.S.C. § 2611(2)(B)(ii).

64.     At all relevant times, Defendants were a single integrated employer that had common management, interrelated operations, central control of labor relations, and common ownership and financial control.

65.     At all relevant times, Mr. Guerra was an eligible employee under the FMLA because Mr. Guerra worked for Defendants since November 2010, and was employed by Defendants full time at the Coast Guard Worksite and the Red Cross Worksites for more than 1250 hours in the preceding 12-month period. 29 U.S.C. § 2611(2)(A).

66.     As an FMLA eligible employee, Mr. Guerra was entitled to twelve (12) weeks of medical leave for a serious health condition that made him unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1)(D). Upon return from FMLA leave, Mr. Guerra was entitled to be reinstated to his previous position as a grill cook which he held when his leave commenced,

or an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

67.     Mr. Guerra exercised his rights under the FMLA by requesting and taking approximately nine days of FMLA leave for the purpose of seeking treatment and recovering from complications from his diabetes.

68.     Defendants terminated Mr. Guerra's employment on the ninth day of his FMLA leave.

69.     In terminating Mr. Guerra's employment during Mr. Guerra's FMLA leave, Defendants willfully, and in bad faith, interfered with, restrained or denied Mr. Guerra's exercise of his FMLA rights, both by interfering with his right to take FMLA leave and by failing to restore Mr. Guerra to either his previous position or a substantially equivalent position.

70.     As a result of Defendants' willful and bad faith interference with Mr. Guerra's FMLA rights, Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits, or other compensation denied or lost, and pre- and post-judgment interest on such amounts; liquidated damages in an amount equal to the monetary damages amount; reinstatement; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate. 29 U.S.C. § 2617(a).

## COUNT II
## VIOLATION OF THE FMLA
### 29 U.S.C. § 2601 *et seq.*
### (Interference with FMLA Rights — Failure to Provide Notice)

71.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

72.     After Defendants were on notice of Mr. Guerra's request and need for FMLA leave, Defendants failed to provide Mr. Guerra with any eligibility notice, rights and

responsibilities notice or designation notice as required by the FMLA; nor did they offer Mr. Guerra FMLA leave for his serious medical condition.

73.     Defendants' failure to provide notice caused prejudice to Mr. Guerra because it caused Defendants to treat Mr. Guerra's absences as unexcused absences, and terminated Mr. Guerra solely on the basis of such absences.

74.     By failing to provide Mr. Guerra with the required FMLA notices, Defendants, willfully and in bad faith, interfered with, restrained or denied Mr. Guerra's exercise of his FMLA rights.

75.     As a result of Defendants' willful and bad faith interference with Mr. Guerra's FMLA rights, Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits, or other compensation denied or lost, and pre- and post-judgment interest on such amounts; liquidated damages in an amount equal to the monetary damages amount; reinstatement; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate.

## COUNT III
## VIOLATION OF THE FMLA
### 29 U.S.C. § 2601 *et seq.*
### (Discrimination — Discharge Based on Exercise of FMLA Rights)

76.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

77.     The FMLA prohibits an employer from discriminating against an employee who engages in a protected activity under the FMLA. 29 U.S.C. § 2615(0(2). Under the FMLA, an employer discriminates against an employee where an employer terminates an employee for engaging in a protected activity within the meaning of the FMLA. Taking FMLA leave constitutes a protected activity under the FMLA.

78.     Mr. Guerra engaged in protected activity by taking FMLA leave beginning July 27, 2015 through August 6, 2015.

79.     Defendants discriminated against Mr. Guerra by terminating Mr. Guerra on August 6, 2015, the same day Mr. Guerra went to the Second Red Cross Worksite to discuss his medical condition, need for accommodations and return to work, because Mr. Guerra engaged in a protected activity by taking FMLA leave.

80.     Defendants' discrimination against Mr. Guerra for engaging in a protected activity within the meaning of the FMLA was willful and in bad faith.

81.     As a result of Defendants' willful and bad faith discrimination against Mr. Guerra for exercising his FMLA rights, Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits, or other compensation denied or lost, and pre- and post-judgment interest on such amounts; liquidated damages in an amount equal to the monetary damages amount; reinstatement; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate.

### COUNT IV
### VIOLATION OF THE DCFMLA
### D.C. Code § 501 *et seg.*
### (Interference with DCFMLA Rights — Denial of DCFMLA Leave and Reinstatement)

82.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

83.     At all relevant times, Defendants were eligible employers under the DCFMLA because they employed 20 or more employee in the District of Columbia. D.C. Code §§ 32-501(2), 32-516.

84.     At all relevant times, Mr. Guerra was an eligible employee under the DCFMLA because he was employed by Defendants for one year without a break in service except for

regular holiday, sick or personal leave granted by Defendants and worked at least 1000 hours during the 12-month period immediately preceding Mr. Guerra's request for family and medical leave. D.C. Code § 32-501(1).

85.     As a DCFMLA eligible employee, Mr. Guerra was entitled to 16 weeks of medical leave for a serious health condition that made him unable to perform the functions of his position. D.C. Code § 32-503(a).  Upon return from FMLA leave, Mr. Guerra was entitled to be reinstated to his previous position as a grill cook which he held when his leave commenced, or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. D.C. Code § 32-505.

86.     Mr. Guerra exercised his rights under the FMLA by requesting and taking approximately nine days of DCFMLA leave for the purpose of seeking treatment and recovering from complications from his diabetes.

87.     Defendants terminated Mr. Guerra's employment on the ninth day of his FMLA leave.

88.     In terminating Mr. Guerra's employment on the ninth day of Mr. Guerra's DCFMLA leave, Defendants willfully, and in bad faith, interfered with, restrained or denied Mr. Guerra's exercise of his DCFMLA rights, both by interfering with his right to take FMLA leave and by failing to restore Mr. Guerra to either his previous position or a substantially equivalent position.

89.     As a result of Defendants' willful and bad faith interference with Mr. Guerra's DCFMLA rights, Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits, or other compensation denied or lost; an amount equal to the greater of such amounts or consequential damages not to exceed an amount equal to three times such amounts plus medical expenses not covered by Mr. Guerra's health insurance; pre- and post-

judgment interest on such amounts; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate. D.C. Code §§ 32-510(c); 32-509(b)(6), (7).

**<u>COUNT V</u>**
**VIOLATION OF THE DCFMLA**
**D.C. Code § 32-501** *et seq.*
**(Interference with DCFMLA Rights — Failure to Provide Notice)**

90.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

91.     After Defendants were on notice of Mr. Guerra's request and need for DCFMLA leave, Defendants failed to provide Mr. Guerra with any eligibility notice, rights and responsibilities notice or designation notice as required by the DCFMLA; nor did they offer Mr. Guerra DCFMLA leave for his serious medical condition.

92.     Defendants' failure to provide notice caused prejudice to Mr. Guerra because it caused Defendants to treat Mr. Guerra's absence on July 31, 2015 as an unexcused absence, and terminated Mr. Guerra solely on the basis of such absence.

93.     By failing to provide Mr. Guerra with any of the required DCFMLA notices, Defendants, willfully and in bad faith, interfered with, restrained or denied Mr. Guerra's exercise of his DCFMLA rights.

94.     As a result of Defendants' willful and bad faith interference with Mr. Guerra's DCFMLA rights, Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits, or other compensation denied or lost; an amount equal to the great of the such amounts or consequential damages not to exceed an amount equal to three times such amounts plus medical expenses not covered by Mr. Guerra's health insurance; pre- and post-judgment interest on such amounts; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate.

## COUNT VI

**VIOLATION OF THE DCFMLA**
**D.C. Code § 501 *et seq.***
**(Retaliation — Discharge Based on Taking FMLA Leave)**

95.    Mr. Guerra re-alleges and incorporates by reference each and every allegation in

paragraphs XX-XX.

96.    The DCFMLA prohibits an employer from retaliating against an employee within

the meaning of the DCFMLA. D.C. Code § 32-507(b). Under the DCFMLA, an employer

retaliates against an employee within the meaning of the DCFMLA where an employer

terminates an employee for engaging in a protected activity. Taking DCFMLA leave constitutes

a protected activity within the meaning of the DCFMLA.

97.    Mr. Guerra engaged in protected activity by taking DCFMLA leave beginning

July 27, 2015 through August 6, 2015.

98.    Defendants retaliated against Mr. Guerra by terminating Mr. Guerra on August 6,

2015, the same day he went to discuss with Defendants his medical condition, need for

accommodations, and his return to work following his FMLA leave, because Mr. Guerra

engaged in a protected activity by taking DCFMLA leave.

99.    Defendants' retaliation against Mr. Guerra for engaging in a protected activity

under the meaning of the DCFMLA was willful and in bad faith.

100.    As a result of Defendants' willful and bad faith retaliation under the DCFMLA,

Mr. Guerra is entitled to monetary damages, including lost wages, salary, employment benefits,

or other compensation denied or lost; an amount equal to the great of such amounts or

consequential damages not to exceed an amount equal to three times such amounts plus medical

expenses not covered by Mr. Guerra's health insurance; pre- and post-judgment interest on such

amounts; reasonable attorneys' fees and costs; and any other and further relief this Court deems appropriate.

**COUNT VII**

**VIOLATION OF THE ADA**
**42 U.S.C. § 12111 *et seq.***
**(Discrimination Based on Disability)**

101.     Mr. Guerra re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

102.     At all relevant times, Defendants were employers within the meaning of the ADA because they are engaged in an industry affecting commerce and had 15 or more employees for each working day of 20 or more calendar weeks in the year preceding August 6, 2015. 42 U.S.C. § 12111(5)(A).

103.     At all relevant times, Mr. Guerra was an employee within the meaning of the ADA. 42 U.S.C. § 12111(4).

104.     The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a).

105.     Mr. Guerra has a disability within the meaning of the ADA because Mr. Guerra's diabetes substantially impairs one or more major life activities with or without reasonable accommodation, including the activities of eating and endocrine function, or has a record of having such impairments. 42 U.S.C. § 12102.

106.     Mr. Guerra is qualified for his position as grill cook because he can perform all of the essential functions of the position with or without reasonable accommodation for his diabetes. 42 U.S.C. § 12111(8).

107.     Defendant I.L. Creation was aware of Mr. Guerra's diabetes, at the latest, when he first took a leave of absence for treatment in November or December 2010.

108.    Defendant 1TLC-LOC was aware of Mr. Guerra's diabetes, at the latest, in May 2015 when Mr. Guerra requested a reasonable accommodation for his disability.

109.    On or about July 27, 2015, Mr. Guerra sought to take a medical leave of absence from work due to complications from his disability.

110.    Defendants were aware that Mr. Guerra needed a medical leave of absence as a reasonable accommodation for his disability.

111.    On or about August 5, 2016, Defendants were informed by Mr. Guerra's healthcare provider that Mr. Guerra needed reasonable accommodations for his disability some of which Defendants had previously, and wrongfully, denied.

112.    On August 6, 2016, the day Mr. Guerra went to the Second Red Cross Worksite to discuss his disability and need for accommodations with Defendants, Defendants discharged Mr. Guerra on the basis of his disability in violation of the ADA.

113.    As a result of Defendants' wrongful conduct, Mr. Guerra suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

114.    As a result of Defendants' willful violation of the ADA, Mr. Guerra is entitled to damages including back pay, pre- and post-judgment interest, compensatory damages, punitive damages; injunctive relief, including reinstatement and an injunction against Defendants to refrain from engaging in violation of the ADA; attorneys' fees and costs; and any other and further relief this Court deems appropriate. 42 U.S.C. §§ 1981, 2000e-5.

## COUNT VIII

**VIOLATION OF THE ADA**
**42 U.S.C. § 12111** *et seq.*
**(Refusal to Provide Reasonable Accommodation)**

115.    Plaintiff re-alleges and incorporates by reference each and every allegation in

paragraphs XX-XX.

116.    Under the ADA, an employer is required to make reasonable accommodation for

known physical limitations of an otherwise qualified individual with a disability absent a

showing by the employer of undue hardship. 42 U.S.C. § 12112(b)(5)(A).

117.    In May 2015, Mr. Guerra requested that Defendants provide reasonable

accommodations for his diabetes.

118.    Defendants denied such reasonable accommodations and willfully refused to

engage in the interactive process with Mr. Guerra.

119.    On August 5, 2015, Mr. Guerra's healthcare provider communicated to

Defendants Mr. Guerra's need for reasonable accommodations for his disability.

120.    Defendants willfully refused to engage in the interactive process with Mr. Guerra

or his healthcare provider. Instead, when Mr. Guerra went to work on August 6, 2015 to discuss

his need for reasonable accommodations and return to work, Defendants terminated Mr. Guerra's

employment.

121.    As a result of Defendants' wrongful conduct, Mr. Guerra suffered substantial

damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional

distress, and humiliation.

122.    As a result of Defendants' willful violation of the ADA, Mr. Guerra is entitled to

damages including back pay, pre- and post-judgment interest, compensatory damages, punitive

damages; injunctive relief, including reinstatement and an injunction against Defendants to

refrain from engaging in violation of the ADA; attorneys' fees and costs; and any other and further relief this Court deems appropriate.

**COUNT IX**

**VIOLATION OF THE ADA**
**42 U.S.C. § 12111 *et seq.***
**(Retaliation for Requesting Reasonable Accommodation)**

123.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

124.    The ADA prohibits employers from retaliating against an employee for engaging in any activity protected by the ADA. 42 U.S.C. § 12203(b).

125.    Mr. Guerra engaged in a protected activity by requesting reasonable accommodations for his disability from Defendants.

126.    Defendants terminated Mr. Guerra's employment on August 6, 2015 when Mr. Guerra went to speak to Defendants about his medical condition, return to work and need for reasonable accommodations.  The day before, August 5, 2015, Defendants had spoken to Mr. Guerra's healthcare provider regarding his need for reasonable accommodations and had informed Mr. Guerra that they needed to make a decision regarding his employment after the conversation with his healthcare provider.

127.    Defendants' termination of Mr. Guerra's employment was because of Mr. Guerra's request for a reasonable accommodation for his disability.

128.    As a result of Defendants' conduct, Mr. Guerra suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

129.    As a result of Defendants' willful violation of the ADA, Mr. Guerra is entitled to damages including back pay, pre- and post-judgment interest, compensatory damages, punitive

damages; injunctive relief, including reinstatement and an injunction against Defendants to refrain from engaging in violation of the ADA; attorneys' fees and costs; and any other and further relief this Court deems appropriate.

<u>COUNT X</u>

**VIOLATION OF THE DCHRA**
**D.C. Code § 2-1402.01** *et seq.*
**(Discrimination Based on Disability)**

130.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

131.    At all relevant times, Defendants were employers within the meaning of the DCHRA. D.C. Code § 2-1401.02(10).

132.    At all relevant times, Mr. Guerra was Defendants' employee within the meaning of the DCHRA. D.C. Code § 2-1401.02(9).

133.    The DFICRA prohibits employers from discharging or otherwise discriminating against qualified individuals on the basis of actual or perceived disability. D.C. Code § 2-1402.11(a)(1).

134.    Mr. Guerra has a disability within the meaning of the DCHRA. D.C. Code § 2- i 401.02(5A).

135.    Mr. Guerra was qualified for the position of grill cook, with or without reasonable accommodation, within the meaning of the DCHRA.

136.    Defendant I.L. Creation was aware of Mr. Guerra's diabetes, at the latest, when he first took a leave of absence for treatment in November or December 2010.

137.    Defendant ITLC-LOC was aware of Mr. Guerra's diabetes, at the latest, in May 2015 when Mr. Guerra requested a reasonable accommodation for his disability.

138.    On or about July 27, 2015, Mr. Guerra sought to take a medical leave of absence from work due to complications from his disability.

139.    Defendants were aware that Mr. Guerra needed a medical leave of absence as a reasonable accommodation for his disability.

140.    On or about August 5, 2016, Defendants were aware that Mr. Guerra needed reasonable accommodations for his disability some of which they had previously, and wrongfully, denied.

141.    On August 6, 2016, the day Mr. Guerra went to the Second Red Cross site to discuss his medical leave, return to work and need for accommodations for his disability, Defendants discharged Mr. Guerra on the basis of his disability in violation of the DHCRA.

142.    As a result of Defendants' wrongful conduct, Mr. Guerra suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

143.    As a result of Defendants' willful violation of the DCHRA, Mr. Guerra is entitled to damages including back pay, pre- and post-judgment interest, compensatory damages, and punitive damages; reinstatement; attorneys' fees and costs and any other and further relief this Court deems appropriate. D.C. Code § 2-1403.13.

## COUNT XI

### VIOLATION OF THE DCHRA
### D.C. Code § 2-1402.01 *et seq.*
### (Refusal to Provide Reasonable Accommodation)

144.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

145.    The DCHRA prohibits an employer from refusing to make a reasonable accommodation to an otherwise qualified employee with a disability.

146.     In May 2015, Mr. Guerra requested that Defendants provide reasonable accommodations for his diabetes.

147.     Defendants denied such reasonable accommodations and willfully refused to engage in the interactive process with Mr. Guerra.

148.     On August 5, 2015, Mr. Guerra's healthcare provider communicated to Defendants Mr. Guerra's need for reasonable accommodations for his disability.

149.     Defendants willfully refused to engage in the interactive process with Mr. Guerra or his healthcare provider. Instead, when Mr. Guerra went to the Second Red Cross site on August 6, 2015 to discuss his disability, medical leave and need for reasonable accommodations, Defendants terminated Mr. Guerra's employment.

150.     As a result of Defendants' willful violation of the DCHRA, Mr. Guerra is entitled to damages including back pay, pre- and post-judgment interest, compensatory damages, and punitive damages; reinstatement; attorneys' fees and costs; and any other and further relief this Court deems appropriate.

## COUNT XII

### VIOLATION OF THE DCHRA
### D.C. Code § 2-1402.01 *et seq.*
### (Retaliation for Requesting Reasonable Accommodation)

151.     Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

152.     Mr. Guerra engaged in a protected activity by requesting reasonable accommodations for his disability from Defendants. D.C. Code § 2-1402.61(a).

153.     Mr. Guerra engaged in a protected activity by requesting reasonable accommodations for his disability from Defendants.

154.    Defendants terminated Mr. Guerra's employment on August 6, 2015 when Mr.

Guerra went to speak to Defendants about his medical condition, return to work and need for

reasonable accommodations. The day before, August 5, 2015, Defendants had spoken to Mr.

Guerra's healthcare provider regarding his need for reasonable accommodations and had

informed Mr. Guerra that they needed to make a decision regarding his employment after the

conversation with his healthcare provider.

155.    Defendants' termination of Mr. Guerra's employment was because of Mr.

Guerra's request for a reasonable accommodation for his disability.

156.    As a result of Defendants' conduct, Mr. Guerra suffered substantial damages,

including, but not limited to, loss of income and benefits, pain and suffering, emotional distress,

and humiliation.

157.    As a result of Defendants' willful violation of the DCHRA, Mr. Guerra is entitled

to damages including back pay, pre- and post-judgment interest, compensatory damages, and

punitive damages; reinstatement; attorneys' fees and costs; and any other and further relief this

Court deems appropriate.

## COUNT XIII

### VIOLATION OF THE D.C. ACCRUED SICK AND SAFE LEAVE ACT
### D.C. Code § 32-131.01 *et seq.*
### (Discrimination Based on Use of Sick Leave - Discharge)

158.    Plaintiff re-alleges and incorporates by reference each and every allegation in

paragraphs XX-XX.

159.    At all times relevant to this action, Defendants were Mr. Guerra's employer

pursuant to the D.C. Accrued Sick and Safe Leave Act. D.C. Code § 32-131.01(3)(A).

160.    At all times relevant to this action, Mr. Guerra was supposed to accrue one hour of paid sick leave for every 37 hours worked, not to exceed 7 days per calendar year. D.C. Code § 32-131.02.

161.    Defendants are prohibited from interfering with, restraining, or denying the exercise or attempt to exercise, the right of an employee to receive sick leave pursuant to the D.C. Sick Leave Act. D.C. Code § 32-131.08.

162.    Defendants interfered with, restrained, or denied Mr. Guerra's exercise or attempt to exercise his right to receive sick leave by wrongfully undercounting Mr. Guerra's hours worked, which caused him to accrue paid sick leave at a slower pace than entitled by law.

163.    Defendants further interfered with, restrained, or denied Mr. Guerra's exercise or attempt to exercise his right to receive sick leave by wrongfully terminating Mr. Guerra after he took sick leave because he took such sick leave.

164.    Defendants' violations of the D.C. Sick Leave Act were repeated, willful, intentional and in bad faith.

165.    As a result of Defendants' willful violations of the D.C. Accrued Sick and Safe Leave Act, Mr. Guerra suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

166.    As a result of Defendants' foregoing violations of the D.C. Accrued Sick and Safe Leave Act, Mr. Guerra is entitled to $500 of damages per day for each accrued paid sick day denied regardless of whether Mr. Guerra took unpaid leave or reported to work; monetary damages including pack pay, compensatory damages, and punitive damages; reinstatement; attorneys' fees and costs; and any other and further relief this Court deems appropriate. D.C. Code § 32-131.12.

## COUNT XIV

**VIOLATION OF THE FLSA**
**29 U.S.C. § 203** *et seq.*
**(Failure to Pay Overtime)**

167.     Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

168.     At all times relevant to this action, Defendants were Mr. Guerra's employers and Mr. Guerra was Defendants' employee pursuant to the FLSA. 29 U.S.C. § 203.

169.     The FLSA required Defendants to pay Mr. Guerra at a rate not less than one and one-half times his regular rate for hours worked in a workweek in excess of 40 hours. 29 U.S.C. § 207(a)(1).

170.     Defendants regularly caused Mr. Guerra to work over forty hours per week by requiring Mr. Guerra to work through his lunch break.

171.     Defendants did not pay Mr. Guerra for this time, and instead deducted 30 minutes from his daily hours whenever Mr. Guerra took a meal ticket, regardless of whether Mr. Guerra worked during this 30 minutes or not.

172.     Defendants violated the FLSA by knowingly failing to compensate Mr. Guerra the rate of time-and-one-half ($1\frac{1}{2}$) his regularly hourly rate of $13.90 for every hour worked in excess of 40 hours in any one workweek.

173.     Defendants violations of the FLSA were repeated, willful, intentional and in bad faith.

174.     As a result of the foregoing violations of the FLSA by Defendants, Mr. Guerra is entitled to unpaid overtime wages, plus and equal amount in liquidated damages, pre-and post-judgment interest, attorneys' fees, costs, and any other and further relief this Court deems appropriate. 29 U.S.C. § 216(b).

## COUNT XV

**VIOLATION OF THE DCMWRA**
**D.C. Code § 32-1002** *el seq.*
**(Failure to Pay Overtime)**

175.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

176.    At all times relevant to this action, Defendants were Mr. Guerra's employers and Mr. Guerra was Defendants' employee under the DCMWRA. D.C. Code § 321002.

177.    The DCMWRA required Defendants to pay Mr. Guerra at a rate not less than one and one-half times his regular rate for hours worked in a workweek in excess of forty hours. D.C. Code § 32-1003(c).

178.    Defendants regularly caused Mr. Guerra to work over forty hours per week by requiring Mr. Guerra to work through his lunch break.

179.    Defendants did not pay Mr. Guerra for this time, and instead deducted thirty (30) minutes from his daily hours whenever Mr. Guerra took a meal ticket, regardless of whether Mr. Guerra worked during this thirty minutes or not.

180.    Defendants violated the DCMWRA by knowingly failing to compensate Mr. Guerra the rate of time-and-one-half ($1^1/_2$) his regularly hourly rate of $13.90 for every hour worked in excess of 40 hours in any one workweek.

181.    Defendants' violations of the DCMWRA were repeated, willful, intentional and in bad faith.

182.    As a result of the foregoing violations of the DCMWRA, Mr. Guerra is entitled to unpaid overtime wages, plus an equal amount in liquidated damages, pre- and post-judgment interest, attorneys' fees, costs, and any other and further relief this Court deems appropriate. D.C. Code § 32-1012.

<u>**COUNT XVI**</u>

**VIOLATION OF THE DCWPCL**
**D.C. Code § 32-1301 el seq.**
**(Unpaid Wages)**

183.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

184.    At all times relevant to this action, Defendants were Mr. Guerra's employers, and Mr. Guerra was Defendants employee pursuant to the DCWPCL. D.C. Code § 32-1301.

185.    The DCWPCL required Defendants to pay Mr. Guerra all wages due for work performed. D.C. Code § 32-1302.

186.    Defendants failed to timely pay Plaintiff his promised and required wage for all the hours he worked, in violation of the DCWPCL.

187.    Defendants' violations of the DCWPCL were repeated, willful, intentional, and in bad faith.

188.    As a result of the foregoing violations of the DCWPCL by Defendants, Mr. Guerra is entitled to unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, costs and any other and further relief this Court deems appropriate. D.C. Code § 32-1308.

<u>**COUNT XVII**</u>

**BREACH OF ORAL EMPLOYMENT CONTRACT**
**(D.C. Common Law)**

189.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

190.    Defendants entered into a binding oral contract with Mr. Guerra for employment, imposing duties on the parties, including, but not limited to, Defendants' payment of wages at a rate of $13.90 per hour for every hour of work performed by Mr. Guerra.

191.    Mr. Guerra performed under such oral contract by executing his work duties as grill cook at Defendants' Red Cross worksite.

192.    Defendants failed to perform their duties by failing to pay Mr. Guerra his $13.90 per hour wage rate for every hour Mr. Guerra performed his work duties. As such, Defendants' breached their contract with Mr. Guerra.

193.    As a result of Defendants' breach of contract, Mr. Guerra is entitled to payment of wages due, pre-judgment interest, and other compensation and damages that Mr. Guerra would have received but for Defendants' breach of contract.

## COUNT XVIII

### UNJUST ENRICHMENT
### (D.C. Common Law)

194.    Plaintiff re-alleges and incorporates by reference each and every allegation in paragraphs XX-XX.

195.    By performing services and work as a grill cook at the Defendants' Red Cross worksite, at the direction of Defendants, Mr. Guerra conferred substantial benefits on Defendants.

196.    Mr. Guerra did not perform this work gratuitously, but rather with the expectation of being lawfully compensated.

197.    Defendants received valuable compensation for the work performed by Mr. Guerra.

198.    Defendants appreciated, accepted and retained the benefits of the work performed by Mr. Guerra.

199.    In exchange for the benefits conferred upon Defendants by Mr. Guerra, Defendants did not compensate Mr. Guerra to the extent required by agreement and by law.

200.    The hours that Mr. Guerra worked and for which they were not properly compensated were performed at the direction and behest of Defendants or those authorized to act on behalf of Defendants.

201.    As a result of Defendants' unjust enrichment, Mr. Guerra is entitled to the value of the benefit of the work performed by him which would have been received but for Defendants wrongful actions.

### **Prayer for Relief**

**WHEREFORE,** Plaintiff respectfully requests this Court to grant him the relief requested as follows:

(a)    Enter a judgment for Mr. Guerra and against Defendants on all Counts;

(b)    Award Mr. Guerra damages for Defendants' violations of the FMLA, ADA, FLSA, DCHRA, D.C. Sick Leave Act, DCMWRA, DCWPCL, breach of contract and unjust enrichment including back pay, compensatory damages, liquidated damages and punitive damages;

(c)    Award Mr. Guerra pre- and post-judgment interest on such amounts;

(d)    Award Mr. Guerra reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action.

(e)    Award Mr. Guerra equitable relief, including reinstatement and an injunction requiring Defendants to comply with the notice requirements imposed by the FMLA and DCFMLA;

(f)      Such other relief that the Court deems proper and just.

**<u>Jury Demand</u>**

Plaintiff  respectfully requests a trial by jury on all issues so triable.

Dated:      August 24, 2017

Respectfully submitted,

By:  /s/ Peter T. Grossi

**WASHINGTON LAWYERS' COMMITTEE**              **ARNOLD & PORTER KAYE**
**FOR CIVIL RIGHTS AND URBAN**                        **SCHOLER LLP**
**AFFAIRS**
Christine T. Dinan, Esq. (D.C. Bar No. 979762)      Peter T. Grossi (DC Bar No. 210517)
Matthew K. Handley (D.C. Bar No. 489946)           Daphne O'Connor (DC Bar No. 450563)
11 DuPont Circle, NW                                          601 Massachusetts Ave., NW
Suite 400                                                            Washington, DC  20001
Washington, DC 20036                                        Telephone:  (202) 942-5000
Telephone:  (202) 319-1000
EmailS:  Christine_dinan@washlaw.org                  Emails:  peter.grossi@apks.com
              Matthew_Handley@washlaw.org                          daphne.oconnor@apks.com

*Attorneys for Plaintiff Jose Guerra*